IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TEBA LESHAWN WALLACE,

    Plaintiff,

v.                                          Civil Action No. PX 16-3242

BOARD OF EDUCATION
OF CALVERT COUNTY, *et al.*,

    Defendants.

******

**MEMORANDUM OPINION**

Pending in this employment discrimination case is Defendants' motion to dismiss or in the alternative motion summary judgment (ECF No. 8). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendants' motion is granted.

**I.    BACKGROUND**

Plaintiff, a substitute bus driver, was employed through two transportation contract companies—Reid's School Bus Services ("Reid") and Alvin Freeland ("Freeland") (collectively, "Contractors")—to provide transportation services to the Calvert County Public Schools. Under the contracts, the Contractors provide the school system buses and drivers to transport its students to and from school. ECF No. 8-4 at 2; *see also* Exhibit B, ECF No. 8-4 at 15–62. The Contractors supervise the bus drivers, retain hiring and firing authority, and are responsible for monitoring and disciplining the drivers. The Contractors also pay the drivers and process all income tax, social security, workers' compensation, and other financial paperwork related to the drivers' employment. *Id.* Contractors are likewise responsible for ensuring the drivers undergo

1

the state-required mandatory training pursuant to COMAR 13A.06.07.09, and are in compliance with all safety standards.

Plaintiff alleges that while she was a substitute driver assigned to a Calvert County school district bus route, parents of white students harassed Plaintiff about her performance. The school would routinely investigate these complaints to include pulling the camera footage from the bus and questioning Plaintiff about her interactions. As a result, Plaintiff needed to take time off work "because [she] was under so much stress and anxiety." ECF No. 1 at 2. Plaintiff then claims to have "made threats to get a lawyer to remove me from the bus," ECF No. 1 at 8, which prompted her supervisors to switch her bus route and replace her with a white driver. As a consequence of this alleged discrimination, Plaintiff is claiming back pay, vacation pay, and compensation for pain and suffering.

After exhausting administrative remedies on her race-based and retaliation claims, Wallace filed her complaint in this Court against the Defendant Board of Education (the "Board") as well as Defendants Edward Cassidy, Chuck Baker and Anthony Navarro. ECF No. 1. Wallace also properly served defendants and moved to proceed in forma pauperis. ECF Nos. 1, 5. On November 25, 2016, Defendants moved to dismiss the Complaint in its entirety, or alternatively for summary judgment in its favor. Plaintiff has failed to respond, and the deadlines for doing so have long passed. Plaintiff has also failed to heed this Court's repeated advisement in accordance with *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975) to respond or risk the Court ruling in the face of Plaintiff's silence. ECF Nos. 12, 15. Accordingly, the Court has determined that Defendants' Motion is ripe for resolution and for the following reasons will be granted.

## II. STANDARD OF REVIEW

Before the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The non-moving party may object to the court construing the motion as one for summary judgment by attesting, via affidavit or declaration, to the need to take additional discovery before resolving the motion. Fed. R. Civ. P. 56(d); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Here, Defendants styled their motion as one to "Dismiss, or in the Alternative, for Summary Judgment" and attached exhibits for court consideration, which gave Plaintiff reasonable notice and opportunity to respond the propriety of summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Plaintiff has not opposed Defendants' motion or submitted an affidavit attesting to the need for additional discovery. Thus, the Court will treat this motion as one for summary judgment and consider the additional documentary evidence submitted by Defendants.

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Conversely, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

## III. ANALYSIS

### A. Dismissal of Defendants Cassidy, Baker and Navarro

As an initial matter, Defendants rightfully point out that claims against the individual defendants Cassidy, Baker and Navarro cannot be sustained as a matter of law because Title VII does not provide for suits against individual supervisors. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Title VII provides that "it shall be an unlawful employment practice for an employer" to engage in race based discrimination. 42 U.S.C. § 2000e-2(a). Title VII further defines "employer" as "a person engaged in an industry affecting commerce who *has fifteen or more employees* and "any agent of such person." *Id.* Although the statute itself does not define "agent," the United States Court of Appeals for the Fourth Circuit has reasoned that "the linkage between the size of the employer and the amount of available relief clearly indicates a congressional intent to limit plaintiffs' remedies to suits against employers." *Lissau*, 159 F.3d at 181. Consequently, the Fourth Circuit has joined numerous other Circuits in holding that "supervisors are not liable in their individual capacities for Title VII violations." *Id.* Cassidy, Baker and Navarro, therefore, must be dismissed as a matter of law.

### B. Title VII Discrimination Claims against the Board

The Board, as the remaining Defendant, primarily argues that it cannot be held liable because the Contractors and not the Board were Plaintiff's employers. Defendants are correct. More than one entity may be considered for Title VII purposes as an "employer" if the entities "jointly" employ the Plaintiff and each exercises significant control over Plaintiff. *See Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015). More specifically, where "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees

who are employed by the other employer," both employers may be held liable for discrimination under Title VII. *Id.* (internal quotations omitted).

In assessing whether an employer exerts control sufficient to assume liability under Title VII, the United States Court of Appeals for the Fourth Circuit has adopted what is known as the "hybrid test." *Id.* The Court articulated a non-exhaustive list of factors for consideration:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employees duties; (8) whether the individual is assigned solely to the putative employer and (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414.

Although no single factor is dispositive, the Fourth Circuit acknowledged that the first three factors are the most important in determining whether the putative employer maintained control sufficient to trigger Title VII liability. *See id.*; *see also Wright v. Mountain View Lawn Care*, 2016 WL 1060341, at *4 (Mar. 11, 2016).

In this case, when considering the evidence in the light most favorable to Wallace, nearly every factor cuts against treating the Board as Wallace's employer for Title VII purposes. First with regard to the authority to hire and fire Wallace, the Board plays a limited role in setting qualification standards for substitute bus drivers like Plaintiff as set forth in COMAR 13A.06.07.07. Otherwise, the Contractors maintain exclusive hiring and firing authority, mete out all discipline, and determine the bus routes to which Plaintiff is assigned. *See* Cassidy

5

Affidavit, ECF No. 8-4, at 2–4; Exhibit A, ECF No. 8-4 at 8–14; and Exhibit D, ECF No. 8-4 at 69–91. Indeed, Defendants' own "contractor's bulletin" expressly states that "school bus contractors are the employers of the school bus drivers in Calvert County, and must "assert their right and responsibility to monitor and discipline their drivers rather than referring drivers to Student Transportation." ECF No. 8-4 at 71. By contrast, no evidence exists that the Board plays a role in the hiring and firing of bus drivers. The first factor, therefore, weighs against considering the Board as Plaintiff's employer.

As to the second factor, the day-to-day supervision of Plaintiff while performing her job as a bus driver, the Contractors assign Plaintiff to her bus routes, maintain all responsibility for monitoring her performance, and discipline her when necessary. *See* ECF No. 8-4 at 15. The only evidence arguably suggesting that the Board supervised Plaintiff is a single letter from Director of Transportation, Edward Cassidy, advising Plaintiff that cell phone use while driving is unsafe and offering suggestions for improved interactions with parents. *See* ECF No. 8-4 at 93. But even this letter is devoid of any evidence that the Board disciplined Plaintiff or monitored her activities on a daily basis. Thus, even construing this letter in the light most favorable to Plaintiff, this factor too weighs against considering the Board as Plaintiff's employer.

The third factor also weighs against the Board being considered a joint employer. The Contractor provides the equipment—the bus itself—and places the onus on the Contractor to keep the bus in good mechanical condition at all times. ECF 8-4 at 2, 16. That the Board provides vehicle safety standards lends some support of Board participation. But the evidence construed in Plaintiff's favor still reflects that the Contractors bear the ultimate responsibility for maintaining the equipment, and so this factor also cuts against the Board as Plaintiff's employer.

The fourth factor also counsels against viewing the Board as an employer. The evidence unequivocally demonstrates that the Contractors maintained Plaintiff's employment records, payroll, insurance and taxes. *See Wright*, 2016 WL 1060341 at *5 (construing similar documents to determine the question of joint control). Further, Plaintiff is paid directly by Contractors and not the Board. *See* ECF No. 8-4 at 2–3. No evidence points to the Board maintaining any employment records as to Plaintiff.

The fifth factor—the length of time the Plaintiff has been employed in connection with the Board—does not advance the analysis. This is so because Plaintiff has driven a bus as a substitute driver for several years, but always has been formally employed through one or more of the Contractors. This arrangement on its face provides little assistance in demonstrating whether the Board exerted any supervisory control over Plaintiff. *Wright*, 2016 WL 1060341 at *5.

As to the provision of formal and informal training, the Board candidly admits that it provides training to assure that the drivers comply with Maryland regulations. ECF No. 8-1 at 18. Defendants also note, however, that this training is mandated statewide and is not specific to the Board. *Id.* Moreover, the Contractors are responsible for certifying that the driver is eligible to attend the training, and coordinates the provision of such training. *Id.* Accordingly, while this factor points to the Board's limited involvement in providing training, it is the Contractors' obligation to ensure the Plaintiff has met the requirements. In this regard, factor six does not weigh in favor of the Board as an employer of Plaintiff.

The seventh factor looks to whether Plaintiff performs the same job functions as other Board employees. Here, the Board does not employ any school bus/vehicle drivers. ECF No. 8-4 at 1. Logically, therefore, Plaintiff's job duties do not overlap at all with those employed by the

7

Board who otherwise educate Calvert County students. This factor, therefore, weighs against construing the Board as Plaintiff's employer.

The eighth factor, whether Plaintiff is assigned solely to the putative employer, is of minimal value here. Although the evidence demonstrates that Plaintiff may work for more than one bus contractor, no evidence demonstrates that she was assigned to drive for a school district other than Calvert County. That said, this factor does not shed much light in this context on the Board's control over Plaintiff or lack thereof, and so will be accorded little weight.

The ninth and final factor also underscores that the Board cannot be considered Plaintiff's employer. Here the contracts between the Board and the contractors unequivocally demonstrate that the Board intended for school vehicle/bus drivers to *not* be its employees. ECF No. 8-4 at 1– 3. Likewise the school contractor bulletin and Board policies and procedures underscore the same basic intent to treat the drivers as agents of the contractor and not school employees. *See* Exhibit A, ECF No. 8-4 at 8–14; Exhibit B, ECF No. 8-4 at 15–62; Exhibit D, ECF No. 8-4 at 69–92. Accordingly, this factor also counsels against treating the Board as Plaintiff's employer.

Overall, the evidence when construed in the light most favorable to Plaintiff demonstrates that the Board exerted little if any control over Plaintiff's employment. Under the *Butler* hybrid test, therefore, no rational trier of fact could find the Board to be Plaintiff's employer under Title VII. Plaintiff's discrimination claims against the Board, therefore, must fail.

### C. Retaliation Claims against the Board

Plaintiff's retaliation claims also fail as a matter of law. To establish her retaliation claim, Plaintiff must demonstrate that (1) she engaged in activity protected under Title VII; (2) that the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action. *See Coleman v. Maryland*

*Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff cannot demonstrate the second element of her claim. Although Plaintiff alleges she was transferred to another bus route, she has not alleged (nor does the evidence reflect) that mere transfer of a route is an adverse employment action. In fact, Plaintiff's employment record reveals that she worked more days in the year of her transfer than the previous two years. She also has retained the same job as a substitute bus driver for the same Contractors without any claimed change in employment status. Accordingly, Plaintiff's retaliation claim must fail as well.

### D. Disability Claims against the Board

Finally, Plaintiff cannot sustain her disability discrimination claim for failure to exhaust her administrative remedies. The Americans with Disabilities Act, like Title VII, requires that Plaintiff exhaust administrative remedies "by filing a charge with the EEOC before pursuing suit in federal court." *Sydnor v. Fairfax City, Va.*, 681 F.3d 591, 591 (4th Cir. 2012). *See also Lewis v. MV Transp., Inc.*, 2012 WL 4518541, at *3 (D. Md. Sept. 28, 2012) ("Under the ADA, the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII.").

"Failure by the employee to exhaust administrative remedies . . . deprives the federal courts of subject matter jurisdiction over the claim." *Kim v. Potter*, No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010), *aff'd*, 416 F. App'x 297 (4th Cir. 2011); *accord Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir. 1995)); *Melendez v. Sebelius*, 611 F. App'x 762, 764 (4th Cir. 2015). Importantly, the scope of the plaintiff's federal causes of action is circumscribed by the contents of the formal administrative complaint as identified and investigated by the EEOC or its County counterpart. *Calvert Group, Ltd.*, 551 F.3d at 300 (internal quotation marks

omitted). Where a complainant alleges a basis for discrimination for the first time in federal court, the claim cannot proceed for failure to exhaust. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC charge alleged only racial discrimination); *Calvert Grp., Ltd.*, 551 F.3d at 301 (plaintiff failed to exhaust claim for race, age, or sex discrimination because EEOC charge only alleges retaliation). Generally, "a plaintiff has failed to exhaust administrative remedies where a charge of discrimination references 'different time frames, actors, and discriminatory conduct' than the allegations found in a complaint." *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *11 (D. Md. Jan. 24, 2014) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)).

Although Plaintiff checked a pre-printed box on the form accompanying her Complaint to indicate that she is pursuing a disability discrimination claim, nowhere on the EEO documentation does she appear to preserve this claim. Accordingly, there is no evidence before the Court that the Plaintiff properly pled and therefore exhausted a disability based discrimination claim with the EEOC. Alternatively, even if Plaintiff had exhausted her administrative remedies, she has not pleaded any facts in the instant complaint to sustain this claim. Consequently, Plaintiff's disability discrimination claim must fail.

## IV.  CONCLUSION

For the above stated reasons, suit cannot proceed as a matter of law against the individual defendants. Further, none of Plaintiff's claims survive challenge from the Board. Defendants' Motion is therefore GRANTED. A separate order will follow.

| 5/31/2017 | /S/ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |